IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TINA MICHELLE WARD,                )
                                   )
            Plaintiff,             )
                                   )
v.                                 )     Case No. CIV-14-107-KEW
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )

**OPINION AND ORDER**

Plaintiff Tina Michelle Ward (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 4, 1969 and was 41 years old at the time of the ALJ's decision. Claimant obtained her GED and one year of college. Claimant received her licensed practical nurse ("LPN") license. Claimant has worked in the past as an LPN, nurse's aide, and fast food assistant manager. Claimant alleges an inability to work beginning November 1, 2007 due to limitations resulting from fibromyalgia, bipolar disorder, and hypertension.

### Procedural History

On September 10, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") entered an unfavorable ruling on Claimant's application on July 28, 2010. The Appeals Council denied review and Claimant appealed to this Court. On March 25, 2013, this Court reversed and remanded the case for further consideration.

On November 18, 2013, ALJ Bernard Porter conducted a second administrative hearing in Poteau, Oklahoma. On January 31, 2014, the ALJ entered a second unfavorable ruling on Claimant's application. Claimant did not seek review by the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

properly assess the opinion evidence; (2) reaching an improper RFC determination; and (3) making erroneous findings at step five.

**Consideration of the Opinion Evidence**

In his decision, the ALJ found Claimant suffered from the severe impairments of fibromyalgia, hypertension, migraine headaches, rheumatism, NOS, right shoulder bursitis, chronic obstructive pulmonary disease, diabetes mellitus, obesity, and bipolar disorder. (Tr. 510). The ALJ determined Claimant retained the RFC to perform light and sedentary work. In so doing, the ALJ found Claimant was able to lift and carry 20 pounds occasionally and 10 pounds frequently. Claimant could stand and/or walk six hours in an eight hour workday and sit for six hours in an eight hour workday. Claimant could push/pull as much as she could lift/carry. Claimant could occasionally reach overhead, occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds or crawl. She could frequently balance, stoop, and crouch. The ALJ determined Claimant must avoid exposure to unprotected heights, moving mechanical parts, dust, fumes, gases, and temperature extremes. She required a sit/stand option that allowed for a change in position at least every 30 minutes. Due to psychologically based factors, Claimant could perform simple tasks and make simple work related decisions. She could have occasional interaction with supervisors and co-workers but no interaction with the public. Claimant may be

5

off task for five percent of the day and miss one day per month. (Tr. 516).

After consulting with a vocational expert, the ALJ determined that Claimant could perform the representative jobs of housekeeping cleaner, hospital product assembler, and conveyor line baker, all of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 525). As a result, the ALJ determined Claimant was not under a disability from November 1, 2007 through the date of the decision. (Tr. 526).

Claimant contends the ALJ did not failed to properly consider the medical opinion evidence in the case. Claimant specifically asserts the ALJ failed to properly evaluate the opinions of his treating physicians, Dr. Thomas R. Dykman, Claimant's treating rheumatologist and Dr. Donald Chambers, Claimant's treating psychiatrist.

On November 2, 2009, Dr. Dykman completed a medical source statement. Dr. Dykman stated Claimant could occasionally lift/carry less than 10 pounds and frequently less than 10 pounds. He also found Claimant could stand/walk for less than 2 hours in an 8 hour workday, sit for less than 6 hours in an 8 hour workday, limited pushing and/or pulling in the upper and lower extremities with the notation that "pain would prevent." Dr. Dykman stated that Claimant could never climb, balance, kneel, crouch, or crawl. He noted that

"pain would prevent & pose a threat to health." (Tr. 501-02). He also found Claimant was limited in reaching in all directions, handling, fingering, and feeling, again stating "pain would prevent." Claimant was determined to be limited in exposure to temperature extremes, vibration, humidity/wetness, and hazards, concluding these conditions "would aggravate pain and pose a threat to injury." (Tr. 503).

The ALJ gave Dr. Dykman's opinion "diminished weight," stating it was not supported nor consistent with the medical record as a whole. (Tr. 521). Specifically, the ALJ found the limitations in the medical source statement were inconsistent with Dr. Dykman's own treatment records, noting Dr. Dykman stated in a letter from March 20, 2009 that Claimant could not travel due to pain yet Claimant attended her appointments with Dr. Dykman in Fayetteville, Arkansas and had traveled with her husband to Ardmore, Oklahoma. (Tr. 521). The ALJ's choice to select this rather minimal discrepancy in the totality of Dr. Dykman's treatment records is curious. The letter states in whole

> This individual is under my care for fibromyalgia. She is unable to be gainfully employed in any work. She is unable to sit, stand, walk, lift, carry, handle objects or travel due to pain. Please refer to my medical records for further information.

(Tr. 494).

This broad based statement in a "to whom it may concern" type

letter expressly refers the reader to the medical record. In the course of treating Claimant's fibromyalgia, Dr. Dykman found she experienced a persistent, moderate dull, aching pain which was aggravated by movement without relief. (Tr. 407, 410, 413). The pain affected bilateral knee, shoulder, neck, hip ad lower and upper back. (Tr. 413). Both hands were positive for decreased range of motion. (Tr. 408). Claimant tested positive for anywhere from 6 to 12 of the 20 total tender points. (Tr. 408, 410, 413, 415, 419, 421). Claimant also demonstrated normal station and gait until the September 22, 2008 appointment when she was found to have a mild slowing of gait. (Tr. 421).

The ALJ's implication that there was an unwarranted change in Dr. Dykman's observance of Claimant's gait represents pure supposition on the ALJ's part. The ALJ also took issue with Dr. Dykman limiting Claimant's handling and fingering, noting no abnormalities in Claimant's hands. (Tr. 522). However, the record clearly notes decreased range of motion in both hands. (Tr. 408). The ALJ also finds that Dr. Dykman did not expressly limit Claimant's climbing, balancing, kneeling, or crouching in his medical records. It is not surprising that these functional limitations would not be noted in the medical record. Limitations in these areas are not inconsistent with the pain and other objective observations made during Dr. Dykman's examinations.

Most troubling is the ALJ's intimation that Dr. Dykman expressed his opinions "in an effort to assist a patient with whom he or she sympathizes for one reason or another." (Tr. 522). This type of reasoning smacks of the old "treating physician's report appears to have been prepared as an accommodation to a patient" statement that has been roundly rejected as a basis for reducing the controlling weight normally afforded a treating physician's opinion. Miller v. Chater, 99 F.3d. 972, 976 (10th Cir. 1996) citing Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). The ALJ was obligated to re-contact Dr. Dykman to ascertain the basis for the functional limitations found by him rather than speculate. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). On remand, the ALJ shall reassess Dr. Dykman's opinion, re-contact him if necessary, or retain further consultative professionals to assist in his assessment.

Dr. Chambers completed a Mental Medical Source Statement on July 26, 2009. He concluded Claimant was markedly limited in the functional areas of the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

9

without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 497-99). He set forth his diagnosis of bipolar mood disorder and concluded the "symptoms are chronic and treatment resistant." (Tr. 499).

The ALJ concluded Dr. Chambers' opinion was entitled to "diminished weight" as not being fully supported by the medical evidence of record as a whole. (Tr. 520). The ALJ specifically found Dr. Chambers did not provide any treatment notes revealing marked limitations in Claimant's ability to function. (Tr. 520). In fact, Dr. Chambers' treatment notes are replete with references to Claimant's inability to get along with others at work, depression, bouts of being "down" and unable to think about anything and being "up" when her thoughts race, problems with attentiveness, being snappy and irritable, complaints at work, scattered thoughts, a mind never at rest, and being tearful and depressed. (Tr. 213-14, 219, 222, 225). The ALJ also indicated a basis for rejecting Dr. Chambers' limitations was Claimant's ability to maintain her nursing license. (Tr. 521). However, the ALJ did not reference nor apparently explore the requirements for

10

doing so or whether they would be difficult for someone with mental impairments to maintain the license. Again, the ALJ should re-examine Dr. Chambers' opinion and provide further explanation for rejecting his findings on limitations.

### RFC Determination

Since the ALJ must reassess the opinions of Claimant's treating physicians, he will also re-evaluate his RFC findings in light of those opinions.

### Step Five Analysis

Again, since the ALJ is reassessing the opinions of the treating physicians and re-evaluating his RFC determination, the ALJ should also reformulate his hypothetical questioning of the vocational expert to coincide with any modifications to the RFC.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 30th day of September, 2015.

```
_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE
```